MACK and another *v.* SLOTEMAN and another.

*(Circuit Court, E. D. Wisconsin. May 27, 1884.)*

1. CONTRACT — GUARANTY — HEATING APPARATUS — ALTERATION OF PROPOSED BUILDING.

Under a contract by which the manufacturers of a steam-heater and ventilator introduced such an apparatus into a building in course of erection and guarantied its efficient working, they should not be held liable under their guaranty if the design of the building, as submitted to them, was afterwards altered, without their consent, so as to materially change the proposed location of windows, fire-places, chimneys, etc., or so as to substantially change the construction of the apparatus itself, thereby reducing the heating power of the apparatus.

2. SAME—NEGLECT OF PLAINTIFF.

After the introduction into a building of a steam-heating and ventilating apparatus the manufacturers of the latter should not be held liable, under a

guaranty of its efficient working, if the proprietor of the building or his servants neglect to fire the furnace to a sufficient intensity, or omit other acts necessary in that connection.

3. SAME—FACT FOR THE JURY.

In an action based upon the guaranty of the manufacturers of a steam-heating apparatus for its efficient working, the jury is to decide upon how far a change in the construction of the building affected the efficiency of the apparatus, and also whether a lack of such efficiency was caused by the neglect of the plaintiff or his servants to fire the boilers sufficiently, or otherwise properly manage the apparatus.

4. SAME—MEASURE OF DAMAGES.

The measure of the plaintiff's damages, if the defendants have broken their contract to heat his building with their apparatus, is the difference between the value of the apparatus in its alleged defective condition and what its value would have been if it had met the requirements of the contract.

5. SAME—EFFICIENCY—PLAINTIFF'S FRAUD.

If the fact be that the apparatus placed in plaintiff's building by defendants in all substantial respects fulfilled the requirements of the contract, and the architect or superintendent fraudulently or in bad faith withheld from defendants a certificate to that effect provided for by the contract, or if the certificate was withheld on account of gross mistake on the part of the superintendent, or failure on his part to exercise an honest judgment upon the question of the sufficiency of the apparatus, then the defendants would be entitled to recover the balance of the contract price, although the certificate is not produced.

6. SAME—HOW PLAINTIFF AFFECTED BY RECOVERY OF COUNTER-CLAIM.

When, pending the trial of a cause, the plaintiff, by whom alone the suit was commenced, amends his pleadings so as to admit a co-plaintiff, so that a recovery of damages is sought in favor of them both, in the event of a verdict against them the recovery upon the defendants' counter-claim will go against both the plaintiffs.

At Law.

*Finches, Lynde & Miller* and *James G. Jenkins,* for plaintiffs.

*Cotzhausen, Sylvester, Scheiber & Jones,* for defendants.

DYER, J., *(charging jury.)* It appears from the pleadings and evidence in this cause that in 1882, in accordance with certain plans and specifications prepared by E. Townsend Mix & Co., as architects and superintendents of the work, the plaintiff Mack constructed for business purposes a certain five-story brick building, situated on the south-west corner of East Water and Wisconsin streets, in this city. In July, 1882, the architects prepared specifications for a steam heating and ventilating apparatus to be provided for the building, and invited proposals for supplying the building with such apparatus. In response thereto, the defendants made proposals by which they proposed to put into the building two of the Walker & Pratt Manufacturing Company's No. 3 safety sectional boilers, one to contain 28 sections and the other 20 sections, both to be complete with all trimmings, castings, fire tools, etc., and to be properly and substantially set in masonry, and to be connected with the proper sized pipes and fittings to radiators and stacks of indirect radiation, as specified in the proposals with reference to the different stories in the building. They declared that it was the intention of their proposals and specifications to include all necessary carpenter and tin work, (not already contracted for;) also galvanized iron at base of radiators, to prevent the cold air flowing across the floor as it is admitted at the windows;

also all necessary mason-work, the mechanical device for regulating cold-air inlet, the registers required for indirect stacks, and whatever should be necessary to constitute a first-class steam-heating apparatus. The defendants also, by these proposals, guarantied to heat the building to a temperature of 70 degrees Fahrenheit, in any winter weather, with a consumption of not more than 175 tons of coal, if the boilers were properly fired, and proposed to put in the apparatus, under the supervision and subject to the approval of the architects and superintendents, in the best and most workmanlike manner; the entire work to be done and the apparatus furnished for $8,400. It appears that these proposals were accepted, and on the twenty-eighth day of July, 1882, the parties entered into a contract by which the defendants agreed to build, finish, and complete in a careful, skillful, and workmanlike manner, to the full and complete satisfaction of Mix & Co., architects and superintendents, and by and at the times mentioned in the specifications, a complete low-pressure steam-heating and ventilating apparatus, to be furnished and set up in full working order, perfect in all its parts, in said building, so as to fully carry out the design of the work as set forth in the specifications, and the plans and drawings therein referred to. The specifications and the plans of the building were made part of the contract. In consideration that the defendants should furnish all materials, and fully and faithfully execute the work, so as to fully carry out the design thereof as set forth in the specifications, and according to the true spirit, meaning, and intent of the same, and to the full and complete satisfaction of the architects and superintendents, the plaintiff Mack agreed to pay to the defendants therefor the sum of $8,400, in installments, as follows: In the language of the contract, "as the work progresses to *approval of superintendent,* he will, from time to time, certify payments to said party of the second part, on account of work and materials furnished under contract, not exceeding sixty per centum upon said work and materials so furnished in building, until the job has been perfectly tested as to its performance, as to execution, and also as to workmanship and economy of fuel, to full satisfaction of superintendent of work. And upon completion of job and fulfillment of guaranties, payments will be made to party of first part of balance due; provided the said superintendent shall certify in writing said party of first part is entitled thereto." I have not recapitulated all the details of the specifications and proposals, nor all the provisions of the contract, but only the substance of such parts as seem most material to the issue.

It appears by undisputed evidence that after the making of the contract, and in the fall of 1882 and winter of 1882–83, the defendants proceeded to put into the building two Walker & Pratt boilers, one containing 28 and the other 20 sections, and in connection therewith the steam-heating and ventilating apparatus, concerning which this controversy has arisen. It is alleged by the plaintiffs that this

apparatus, including the boilers, did not, in certain essential respects, meet the requirements of the contract, and this is a suit on the part of the plaintiffs to recover damages which they claim to have sustained on account of the alleged failure of the defendants to place in the building such a heating and ventilating apparatus as the contract provided for and required. The defendants, in reply, maintain that they fully performed the contract; that they furnished such an apparatus as they obligated themselves to furnish, and that the plaintiffs have no valid claim against them for damages; and further, on their part, by way of counter-claim, seek to recover the unpaid balance of the contract price for the apparatus, and also a balance alleged to be due them for extra work done and materials furnished.

The first question for your consideration is, are the defendants liable in damages to the plaintiffs? and that involves the question whether or not the defendants fulfilled the contract by furnishing and placing in the building such a steam-heating and ventilating apparatus as it was their duty under the contract to furnish and place in the building, and by doing the work incident thereto in a proper and workmanlike manner. It is alleged by the plaintiffs that the contract was not fulfilled by the defendants in the following particulars: That the apparatus as placed in the building was insufficient to heat it to a temperature of 70 degrees Fahrenheit in winter weather; that it was insufficient to thus heat the building in any winter weather with a consumption of not more than 175 tons of coal in a season of eight months; and that it was not placed in the building in complete condition, and in a skillful and workmanlike manner.

The contract between the parties speaks for itself, and its purpose and meaning are apparent on its face. There is no difficulty in understanding it. When the defendants entered into the contract they must be presumed to have known the situation and exposure of the building, and also all such details relating to the form and character of its construction as were disclosed by the plans, for the plans were made part of the contract. It must be presumed that they had knowledge of everything pertaining to the interior arrangement and architectural design of the structure, which was shown by the plans, and that with this knowledge they deliberately entered into the contract. Having made the contract, it was incumbent upon them to fulfill its provisions with fidelity, and to perform its guaranties to the full extent which their terms and spirit required, and if, through any fault, neglect, or omission on their part they have failed to meet the requirements of their undertaking, they are answerable to the plaintiffs in damages, for this was the obligation they assumed, and this the responsibility they incurred. But if they have performed their contract and have furnished to the plaintiffs what they agreed to furnish, then they are not so liable.

Recurring to the contract, let us observe again the specific duties which it imposed on the defendants. In the first place, they were to

build, finish, and complete, in a careful, skillful, and workmanlike manner, a complete low-pressure steam-heating and ventilating apparatus, to be furnished and set up in full working order, perfect in all its parts, in the building, so as to fully carry out the design of the work as set forth in the specifications and the plans and drawings of the structure. The building was to be divided into numerous apartments, which were to be arranged and constructed for occupation, and it was evidently the intent of the parties that this should be a complete, and, with proper management, a successfully working apparatus, so that on its completion it would properly heat the building. There were to be two sectional boilers of a certain manufacture, which were to be complete, with all trimmings, castings, fire tools, etc. These boilers were to be connected with pipes of the proper size, and fittings to radiators and stacks of indirect radiation, throughout the different stories. All mechanical devices for making the apparatus operative for the purposes of heating and ventilation were to be furnished and applied, together with whatever should be necessary to constitute a first-class heating apparatus. These specifications and provisions of the contract are plain, and need no interpretation from the court. Then we come to the guaranty, which is made a vital feature of this controversy. The defendants guarantied that this apparatus would heat the building to a temperature of 70 degrees Fahrenheit, in any winter weather, with a consumption of not more than 175 tons of coal in each season of eight months, if the boilers were properly fired. This is a guaranty of the capacity of the apparatus; that is, that as it should be put up and established in the building by the defendants, it would heat the building to the specified degree of temperature in any winter weather; and this means the building as it was situated, and with its exposure, and according to its structural arrangement and design, as shown by the plans. It means, also, that if necessary it would heat the entire building to the specified degree of temperature, and that the consumption of coal should not exceed the specified amount per season. But the guaranty also means that the apparatus would do this work if it was properly managed. Of course, the defendants are not to be understood as warranting that the apparatus would meet the requirements named, under negligent or incompetent management; and here I instruct you that if this apparatus failed to heat the building, or any part of it, to the required degree of temperature, because of careless or unskillful or incompetent management on the part of any employe of the plaintiffs to whom its care and charge were intrusted, and if it would have met the requirements of the guaranty under proper care and competent management, the plaintiffs, and not the defendants, are answerable for such failure. The defendants, as I have said, are to be held to a faithful performance of their contract, and if in fact they did perform, by putting into the building a complete apparatus, capable, under proper care and competent management, of doing the

required work, then they ought not to be held accountable for any failure of the apparatus, resulting from negligence or unskillfulness or incompetency in its management by the plaintiff's employes. In this connection I give you the eighth instruction asked by defendants, as follows:

"In regard to the sufficiency of this steam-heating apparatus, the contract between the parties provides that the same must be adequate to heat the building to a temperature of 70 degrees Fahrenheit, in any winter weather, with a consumption of not more than 175 tons of coal, 'if the boilers are properly fired.' And if the jury find from the evidence that said boilers were not properly fired while the plaintiffs had charge of the heating, then the failure of the apparatus to conform in these particulars cannot be assigned as a breach of the contract."

I do not say or intimate what was the fact in relation to the firing of the boilers or the management of the apparatus; that is a question which it is your exclusive province to pass upon. As I have indicated, if this apparatus, as put into the building by the defendants, did not meet the requirements of the guaranty, the defendants cannot be relieved from their obligation by claiming that the building was so situated as to be peculiarly exposed to the winds of winter, or that it has an unusual extension of glass surface, for they contracted with reference to that state of facts. And in regard to workmanship and materials used in the construction of the building, externally and internally, for the purpose of protection against cold, I instruct you that the defendants contracted with reference to such quality of workmanship and materials as ordinarily enters into and as would ordinarily and naturally be expected to be placed in buildings of the class and character of this building. If first-class workmanship and materials are ordinarily put into such buildings, then the defendants had the right to expect that such workmanship and materials would be put into this building. The defendants did not contract against mechanical defects or deficiencies in construction which ought not to have existed, if any such did, in fact, exist. A good deal of testimony has been produced in relation to the construction of windows in the building. The defendants had the right to expect, when they made their guaranty, that the windows and window-frames and casings would be so constructed and adjusted as to afford such security against the external atmosphere as is ordinarily provided, and as it would be naturally expected the builders would provide in such a building. The defendants did not guaranty to protect the inmates of the building against exposure to cold arising from mechanical defects in the windows which ought not to have existed in such a structure, if any such defects did, in fact, exist. The meaning of their guaranty is that the apparatus would heat the building to a temperature of 70 degrees Fahrenheit, in any winter weather, with the windows constructed and adjusted as it would be ordinarily expected they would be constructed and adjusted in such a building. In other words, as is stated in one of the instructions asked by the defendants:

"If the jury find from the evidence that, as now claimed by the defendants, sufficient heat was produced and generated to heat the building to the required temperature, but that the same could not at all times be retained in some of the rooms on account of defects in the construction, not manifest from the original plans and specifications, and beyond the control of these defendants, then such occasional insufficient heating thus caused cannot be properly laid to their charge."

Whether there were such defects in the construction of the building as is claimed by the defendants, is a question of fact for you alone to determine; and whether, if there were defects, the alleged insufficient heating of the rooms, or any of them, was attributable to such defects, is also a question for your sole consideration.

As to rooms containing grates or fire-places and ventilating shafts, if the proposed arrangement and construction of the rooms were shown on the plans, then the defendants must be held to have contracted with such arrangement and construction in view. In this connection, with slight change, I give you the eleventh instruction asked by the defendants:

"If the jury find from the evidence that subsequent to the signing of the contract changes and alterations were made by order of the architects, either in the building or heating apparatus, that interfered materially with the carrying out of the original contract in heating said block, then such changes were at the risk of the owners; and for insufficiency of the apparatus in any particular, growing out of such alterations so made, the defendants would not be responsible."

As to the chimney in the building, about which testimony has been given, I have only to say to you that if the plans of the building showed what were to be the size, height, form, and capacity of the chimney, and the construction and arrangement of its flues, and the defendants could ascertain the same by inspection of the plans and drawings, and if, subsequently, there was no agreement to change the size and capacity of the chimney or flues, then they must be held to have made their contract with reference to such plans. If the plans were ambiguous in that particular, or did not specify details in the construction of the chimney, so as to enable the defendants to know what kind of chimney was to be constructed, then they had a right to suppose and expect that a sufficient and properly constructed chimney would be erected, with properly arranged flues, so as to permit the efficient operation of such a steam-heating apparatus as they proposed to put into the building. If, during the progress of the work, the defendants were advised of the proposed form and construction of the chimney, and requested certain changes to be made, and such changes were accordingly made, and they afterwards placed the apparatus in the building, then they cannot complain of such changes as tending to render the work of the apparatus inefficient. Further, in the language of one of the instructions asked, "if the jury find from the evidence that subsequent to the signing of the contract it was promised and agreed to enlarge the size of the chimney beyond

what the original plans showed it to be, and that such promise and agreement were not faithfully carried out, then, and in such case, occasional defects in the working of said steam-heating apparatus, caused by the failure to enlarge the size of the chimney, are not chargeable to the defendants in this case."

Now, gentlemen, I think I have said to you all that I am required to say in considering the plaintiffs' case concerning the rights, duties, and obligations of the parties under this contract. Counsel, in argument, have stated to you with clearness the points of difference between the parties and the respective claims they make. I shall not travel over the field of facts covered by the evidence. Upon the proofs so fully laid before you, you must determine whether the defendants failed to perform their contract as contended by the plaintiffs, or whether in fact they fulfilled its requirements, as they insist they did.

[The court here stated to the jury the respective claims of the parties upon this branch of the case.]

In establishing their case, it is incumbent upon the plaintiffs to satisfy you by the evidence that the apparatus did not fulfill the requirements of the guaranty; and in determining this question you have a right to consider, among other things, whether a fair and sufficient test of the heating capacity of the apparatus was or was not made before the plaintiffs called on the defendants to remedy the alleged deficiencies therein. If, under proper management and proper firing of the boilers, the apparatus in question was inadequate to heat this building, constructed according to the plans and specifications, to a temperature of 70 degrees Fahrenheit, in any winter weather, with a consumption of 175 tons of coal in a season of eight months, and if such failure to so heat the building was not attributable to such defects or changes in the construction of the building, if any, as I have instructed you the defendants did not contract to provide against, and were not answerable for, then the plaintiffs are entitled to an allowance of damages in their favor. If, on the contrary, under competent management and proper firing of the boilers, the apparatus was adequate to heat the building constructed according to the plans and specifications, and in such a workmanlike manner as I have said to you the defendants had a right to expect it would be constructed, to the specified degree of temperature with the specified consumption of coal per season, then the plaintiffs are not entitled to recover damages against the defendants. So, too, if the apparatus had the necessary heating capacity to do the required work, but failed to heat the building to the extent required by the contract, and such failure was solely occasioned by incompetent management of the apparatus or firing of the boilers by the plaintiff's employes, or by such defects or changes, if any, in the construction of the building as I have said the plaintiffs were alone responsible for, or by either of those alleged causes, or all of them combined, then the plaintiffs are not entitled to recover.

If you find the plaintiffs entitled to recover, the next question is, what damages is it permissible to award them? Upon that subject I instruct you that the measure of the plaintiffs' damages, if the defendants have broken their contract, is the difference between the value of the apparatus in its alleged defective condition and what its value would have been if it had met the requirements of the contract. This latter sum—that is, the value of the apparatus if it had been such as the contract called for—may be more than the contract price or it may be less, but it is obviously the proper standard by which to measure the plaintiffs' damages, because such an apparatus was exactly what the plaintiffs were entitled to, and then the contractor obtains, also, just what his defective work is worth. *White* v. *Brockway*, 40 Mich. 209; 2 Suth. Dam. 482. So, gentlemen, if you come to this question in the case, you will determine from the evidence what was the value of this apparatus in its alleged defective condition; then, what would have been the value of the apparatus if it had fulfilled the conditions of the contract; and the difference between those values would be the plaintiffs' damages. Then, having thus ascertained the amount of such damages, you will allow to the defendants or give them credit for the amount still unpaid them on account of the apparatus, such amount being ascertained on the basis of the value of the apparatus. To illustrate,—and you will understand what I now say as wholly illustration, and not as any intimation of any opinion of the court upon the facts of the case,—suppose you find the contract broken; then suppose you find the value of such an apparatus as the contract called for to have been $15,000, and the value of the apparatus in its alleged defective condition to have been $8,400,—then the difference between those two sums, which is $6,600, would be the plaintiffs' damages. Then, deducting from the $6,600 what remains unpaid to the defendants, which is $5,900, the balance would be $700, and that would be the amount of the verdict in favor of the plaintiffs. Again, to illustrate, suppose you should find the value of such an apparatus as the contract called for to have been $10,000, and the value of the apparatus actually put into the building to have been $8,400, then the difference between those two sums, which is $1,600, would be the plaintiffs' damages. In such case you would apply this $1,600 on the $5,900 unpaid to the defendants, thereby reducing that sum to $4,300, and your verdict would then be for the defendants for $4,300. In other words, having ascertained the difference between the value of the apparatus actually furnished, and the value of the apparatus if it had done the work stipulated for in the contract, you will then allow the defendants what is unpaid to them, ascertained on the basis of the value of the apparatus they furnished, and then render a verdict either for the plaintiffs or defendants, as the final result of such an ascertainment may make necessary.

If you find that the defendants did not perform their contract,

and therefore that the plaintiffs are entitled to an allowance of damages,—which is the branch of the case we have been thus far considering,—then there will be nothing to consider in relation to the defendant's counter-claim for the balance of the contract price. But suppose your determination should be that the defendants have duly performed the contract; that there was no breach on their part, and therefore that the plaintiffs are not entitled to damages,—the question then arises, what are the rights of the parties with reference to the balance of the unpaid contract price—$5,900—which the defendants seek to recover on their counter-claim? and this is the next question for consideration.

Ordinarily, upon its being determined that there has been no breach of a contract, it follows as a consequence that the parties to whom anything is due on the contract are entitled to recover the amount thus due. In the contract in question it was specially provided that upon completion of the work to the satisfaction of the superintendent, and fulfillment of guaranties, the defendants should receive payment of the balance due upon the contract, provided the said superintendent should certify in writing that the defendants were entitled thereto. By this provision it was made a condition precedent to the right of the defendants to payment of the balance of the contract price on completion of the work, to obtain the certificate of the superintendent in writing that they were entitled to such unpaid balance. No such certificate has been obtained by the defendants from the superintendent, and it is understood as a fact in the case that the superintendent has refused to make the certificate.

\*     \*     \*     \*     \*     \*     \*     \*

It follows, therefore, that even though you should be of the opinion that the defendants have performed their contract by putting into this building such an apparatus as their guaranty required, still they are not entitled to recover the balance of the contract price unless the non-production of the certificate of the superintendent can be avoided or excused. This state of the case results from the fact that the parties chose to make a contract by which the architect or superintendent was made the judge between the parties of the completeness and sufficiency of the work, and by which the right of the defendants to payment of the final balance of the contract price was made dependent upon the execution by the superintendent of a certificate that they were entitled thereto. The court cannot change the contract which the parties made, or make a new contract for them. But, though the non-production of the superintendent's certificate, if not in some legal manner excused, prevents a recovery by the defendants of the balance of the contract price, it ceases to be a bar to such recovery when such facts are shown as in the law excuse or avoid its non-production; and I now proceed to state to you what it is necessary for the defendants to establish to bring about that result.

If the fact be that the apparatus which the defendants put into the plaintiffs' building in all substantial and material respects fulfilled the requirements of the contract, and the architect or superintendent fraudulently, or in bad faith, refused to give to the defendants the certificate provided for by the contract; or if the certificate was withheld in consequence of gross mistake of the superintendent, or failure on his part to exercise an honest judgment on the question of the sufficiency of the apparatus,—then the defendants would be entitled to recover the balance of the contract price, although the certificate is not produced. What was contemplated by the contract was that, after the apparatus was put in operation in the building, the superintendent, with full knowledge of all such facts as would enable him to exercise his judgment in the matter, should in good faith, and upon his best judgment, decide for the parties whether the apparatus met the requirements of the guaranty, and whether, therefore, the defendants were entitled to the balance of the contract price remaining unpaid. If he so exercised his honest judgment, then his decision against the right of the defendants to a certificate cannot be questioned here on the ground merely that he committed an error of judgment. What the law exacts from an arbiter thus chosen, is an understanding of the facts upon which he is to exercise his judgment, and good faith. For example, if an architect or superintendent to whom such a power had been delegated, in the face of a manifest performance of a contract,—a performance with which he ought in right and justice to be satisfied,—were to perversely, wrongfully, and unjustly refuse to give the required certificate, that would be evidence of bad faith; and in such case, it appearing that the refusal to give the certificate was not the result of the exercise of a candid and honest judgment, there would be no doubt of the right of the party to recover what might be due him on the contract, notwithstanding he had not received a certificate. Really the question in a case like this is, has the superintendent exercised the authority given him to determine whether the party has performed his agreement and is entitled to payment, with an honest purpose to carry out the real intention of the parties as collected from their agreement? And, as tending to establish bad faith, it is competent to show that the person to whom the power was given to make the required certificate, perversely, wrongfully, and unjustly withheld the certificate; that he was actuated by ill-will, prejudice, partiality, caprice, or motives inconsistent with an intent to exercise his honest judgment of the sufficiency of the work. But, as I have said, if the case is one where the superintendent honestly exercises his judgment upon the question, mere error in his conclusions will not avoid the non-production of the certificate; nor is such error of judgment sufficient to show fraud or bad faith or mistake. The mistake that will avoid the production of the superintendent's certificate must be gross. It must be a mistake in some matter of fact by which he is led to a false result. It must be

more than a merely erroneous conclusion arrived at on consideration of all the facts. One test of such a mistake is that it is of such a kind, and so obvious, that when brought to the notice of the arbitrator who is to decide the question, it would induce him to alter the result to which he had come in the particular specified. It must be a mistake as to a fact upon which the judgment of the superintendent or arbitrator has not passed as a part of his investigation, and of such a nature, and so proved, as to lead to a reasonable belief that he was misled and deceived by it, and that if he had known the truth he would have come to a different result. *Boston Water-power Co.* v. *Gray,* 6 Metc. 131. In the language of one of the decisions cited on the argument, the mistake, to be available in such a case, must be one which shows clearly that the superintendent was misled, deluded, or so far misapprehended the facts that he did not exercise his real judgment in the case. *McAuley* v. *Carter,* 22 Ill. 57.

\*        \*        \*        \*        \*        \*        \*        \*

Considering all the testimony bearing on the subject, with the suggestions in relation thereto which have been urged by counsel, you will determine whether the non-production of the certificate is avoided or excused. If it is, and if the contract was fully performed, then the defendants are entitled to recover on their counter-claim for the unpaid balance of the contract price. If the production of the certificate is not avoided or excused, then the defendants are not entitled to recover on that counter-claim, notwithstanding you may think that the apparatus satisfied the requirements of the guaranty.

\*        \*        \*        \*        \*        \*        \*        \*

Pending the trial, the plaintiff Mack, by whom alone this suit was originally commenced, has amended his pleadings by making one Alexander Guiterman a co-plaintiff, and so a recovery of damages is sought in favor of both plaintiffs. This being so, if you find that the plaintiffs are not entitled to recover, and that the defendants are, your verdict will go against both the plaintiffs.